## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## PINE BLUFF DIVISION

JERRY LEE FRANKS                                                    PLAINTIFF
ADC #108225

v.                          CASE NO.: 5:04CV00282 BD

LARRY NORRIS, et al.                                               DEFENDANTS

### MEMORANDUM OPINION AND ORDER

Plaintiff brings this action under 42 U.S.C. § 1983 alleging a violation of his

Eighth Amendment right to be free from cruel and unusual punishment.  Specifically,

Plaintiff alleges that Defendants failed to protect him from the violent attack by another

inmate and failed to properly train and supervise staff.  Defendants have moved for

summary judgment (#81), and Plaintiff has responded (#89).

### PROCEDURAL HISTORY

Plaintiff, Jerry Lee Franks, is an inmate confined in the Varner Unit of the

Arkansas Department of Correction (ADC).  The Defendants are ADC employees sued in

both their official and individual capacities.  Claims against Defendant White were

dismissed because Plaintiff failed to state a claim against him (#9).  Defendant Taylor

was also dismissed, without prejudice, because Plaintiff failed to provide a valid address

for service of process (#94).

In their Motion for Summary Judgment (#81), Defendants contend that Plaintiff has failed to establish a prima facie case on his failure to protect claim. They also contend that the supervisory Defendants are entitled to summary judgment because they cannot be held liable under the theory of *respondeat superior*. Plaintiff has provided several hundred pages of information in his Brief in Support of Response (#90) and states that he could prove his claims through additional discovery. Trial is scheduled to begin July 16, 2007 (#44).

The Court has carefully reviewed the motion for summary judgment, the Plaintiff's response, and attached papers submitted by both partie**s.** The facts giving rise to this lawsuit are either undisputed or have been resolved in favor of the Plaintiff for purposes of deciding the motion for summary judgment.

## FACTUAL BACKGROUND

 Plaintiff was transferred to the Tucker Maximum Security Unit on April 23, 2003. On August 6, 2003, he was assigned the position of West Isolation Porter. As part of this job, Plaintiff cleaned inmate cells in the isolation unit. ADC policy required that a security officer be present whenever a porter was in a cellblock or isolation area.

In August or September, inmates Van and Hussey asked Plaintiff to speak to the Unit chaplain on their behalf, in order to add their names to the list of inmates participating in Ramadan. Plaintiff spoke with the Unit chaplain and inmates Van and Hussey were subsequently added to the Ramadan list. A short time later, inmates Van

2

and Hussey decided they did not want to participate in Ramadan after all, and they asked Plaintiff to speak with the Unit chaplain again to have their names removed from the Ramadan list.  Plaintiff refused this request and, after this refusal, inmates Van and Hussey plotted to kill Plaintiff.

Another inmate alerted Plaintiff to the plot by Van and Hussey to kill him, and Plaintiff notified Defendant Douglas and Officer Taylor about the plot.  According to Plaintiff, he told every officer in the isolation area about the plot and, consequently, the plot was widely known by the officers in the isolation area.  After learning of the plot, Plaintiff was more careful around inmates Van and Hussey.

Plaintiff never filed a grievance in regard to the plot, and he did not request a transfer to another area.  Nor did he report the plot to the warden, assistant warden, or any official outside of the isolation area because he feared he would lose his job as a porter.

On the morning of November 25, 2003, Inmate James Spears was housed in punitive isolation in Isolation West, the area where Plaintiff worked as a porter.  Spears was escorted to the showers by Officer Taylor and Defendant Douglas prior to Plaintiff's arrival in West Isolation.  After Plaintiff arrived in West Isolation and cleaned six cells, including Spears's cell, officers returned Spears to his cell.  Spears apparently had been involved in an altercation with another inmate before returning to his cell and was angry. Defendant Douglas knew Spears was agitated.

3

Upon returning to his cell, Spears complained that his cell had not been cleaned properly.  Defendant Douglas ordered Plaintiff to see what Spears was upset about.  Plaintiff approached inmate Spears's cell, escorted by Officer Taylor, with the mop and cleaning supplies.  Inmate Spears told Plaintiff that an area of his cell had not been mopped.  After requesting permission from Officer Taylor, Plaintiff passed the mop through the cell bars so that Spears could clean the area of his cell floor that he was complaining about.  At some point before the attack, Officer Taylor walked away from Spears's cell.

Meanwhile, inmate Spears mopped his cell but, as he handed the mop back to Plaintiff through the bars, the mop head fell off.  Spears apparently had loosened the mop head so that he could assault Plaintiff as he reached through the bars to retrieve it.  As planned, the mop head fell just inside the closed bars of Spears's cell.  When Plaintiff bent down to retrieve the mop head, Spears reached through the bars, grabbed Plaintiff, and attempted to cut his throat with a homemade shank.  The attack caused a large laceration on the left side of Plaintiff's face.  Plaintiff now has a four and one-half inch scar and nerve damage as a result of the attack.

Spears was not involved in the Ramadan request, and, prior to the attack, Plaintiff did not believe Spears was part of the plot to harm him.  In fact, Plaintiff had experienced no problems with Spears until the day of the attack.  Plaintiff testified that immediately after he was injured, Defendant Douglas told him that she knew that Spears was angry

4

with another inmate, but never thought he would attack Plaintiff.  Defendant Douglas then escorted Plaintiff to the Unit Infirmary.  Inmate Spears was issued a Major Disciplinary, and subsequently was disciplined for attacking Plaintiff.

Plaintiff filed Grievance # MX03-3259 alleging that inmate Spears had attempted to take his life.  Defendant James responded to Plaintiff's grievance, stating that disciplinary action had been taken against the inmate responsible for the assault.  Plaintiff appealed the assistant warden's response to his grievance, and Defendant May responded to plaintiff's grievance appeal.

Plaintiff then brought this suit against Defendants Douglas, Bailey, Wimberly, and Officer Taylor for failing to protect him and failing to prevent the attack.  He also alleged that Defendants Norris, May, Bailey, James, and Evans failed to properly train and supervise prison staff.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c). The Supreme Court has established guidelines to assist trial courts in determining whether this standard has been met:

> The inquiry performed is the threshold inquiry of determining whether there is the need for a trial - whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511 (1986). In reviewing a motion for summary judgment, the Court must view the facts in a light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences to be drawn from the record. *Vette Co. v. Aetna Cas. & Sur. Co.*, 612 F.2d 1076, 1077 (8th Cir. 1980).

The moving party bears the initial burden of identifying the evidence which it believes demonstrates the absence of a genuine issue of material fact. *Webb v. Lawrence County*, 144 F.3d 1131, 1134 (8th Cir. 1998). This burden may be discharged by showing that there is an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554 (1986). Once the moving party carries this burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Inc. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356 (1986).

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e). The court does not weigh the evidence, but instead determines whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511 (1986).

[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

*Id*. at 249-250.

## DISCUSSION

Plaintiff urges two theories of liability against the Defendants for the injuries he sustained in the attack by Spears: first, that Defendants failed to protect him from the attack; and second, that Defendants failed to properly train and supervise prison officials. The undisputed facts support neither theory.

### A.  Failure to Protect

A prison official violates the Eighth Amendment by failing to protect an inmate from a  substantial risk of serious harm.  *Blades v. Schuetzle*, 302 F.3d 801, 803 (8th Cir. 2002).  There are two components to an Eighth Amendment failure to protect claim that Plaintiff must prove.  First, there must be a substantial risk of serious harm to the inmate.  *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S.Ct. 1970, 1977 (1994).  This objective element ensures that the risk of harm is sufficiently serious to amount to a constitutional deprivation.  *Jensen v. Clarke*, 73 F.3d 808, 810 (8th Cir. 1996). Second, the prison official must have been deliberately indifferent to the substantial risk of serious harm.  *Farmer*, 511 U.S. at 834.  This is a subjective element that requires that the prison official know of and disregard the excessive risk to the inmate.  *Id.* at 837. The subjective requirement is met if the official is aware of facts from which to infer a

substantial risk of serious harm to the inmate, and then actually draws the inference.  *Id.*

This does not mean a prison official must believe that Plaintiff would actually be harmed;

it is enough that the official acted or failed to act despite knowledge of a substantial

risk of serious harm.  *Ambrose v. Young*, 474 F.3d 1070, 1076 (8th Cir. 2007).

Additionally, an obvious risk of harm justifies the inference that a prison official

subjectively disregarded the substantial risk of serious harm to the inmate.  *Lenz v. Wade*,

___F.3d___,  2007 WL 1758564, *3 (8th Cir. June 20, 2007) (citing *Hope v. Pelzer*, 536

 U.S. 730, 738 (2002)).

 Plaintiff was a porter in the West Isolation barracks of the Tucker Maximum

Security Unit.  The isolation units of maximum security prisons often hold the most

dangerous and violent offenders.  Many of these offenders are in isolation because of

previous violent interactions with other inmates.  Plaintiff's job required him to clean the

prison cells while the inmates were not present.  On the day of the attack, Plaintiff was

ordered to go to an inmate's cell to see what he was complaining about.  The inmate was

locked behind bars but, viewing the facts in a light most favorable to Plaintiff, there was

an inherent risk of serious harm when Defendant Douglas ordered Plaintiff to interact

with an angry inmate in the isolation unit.

 Plaintiff must also show, however, that the Defendants knew of and disregarded

the excessive risk of serious harm.  *Farmer*, 511 U.S. at 837.  Inmate Spears was angry

when he was returned to his cell because of a dispute with another inmate.  Defendant

Douglas was aware of Spears's agitated state.  However, it is undisputed that Spears's agitation did not involve Plaintiff.

Viewing the facts in a light most favorable to Plaintiff, Defendant Douglas was aware that a plot existed to kill Plaintiff, since the plot was commonly known by the staff in the isolation barracks.  However, not even the Plaintiff himself believed the plot included inmate Spears.  Plaintiff testified that, based on this belief, he was more careful around Van and Hussey.  There is no evidence that any of the Defendants knew that Spears was involved in the plot, and Plaintiff himself did not believe Spears was involved in the plot at the time of the attack.  Additionally, Plaintiff had experienced no previous disputes with Spears and had no reason to believe that Spears was going to attack him.

Without evidence that any of the Defendants knew Spears posed an excessive risk to Plaintiff, Defendants still could be liable if the risk was obvious enough to justify an inference that they subjectively disregarded the risk.  *Lenz*, 2007 WL 1758564 at *3.  Based on Plaintiff's deposition testimony and his description of his conduct immediately preceding the attack, it is apparent that the risk was not obvious to Plaintiff.  Otherwise, he would not have reached into Spears's cell to retrieve the mop head.  There is no evidence that any of the Defendants was any more aware of the risk posed by Spears than was Plaintiff himself.  Accordingly, Plaintiff's claim of failure to protect in violation of his Eighth Amendment rights cannot be sustained and must be dismissed.

### B.  Failure to Train and Supervise

Supervisory Defendants cannot not be held liable under § 1983 for constitutional violations of subordinates under a *respondeat superior* theory.  *Tlamka v. Serrell*, 244 F.3d 628, 635 (8th Cir. 2001).  Supervisors are liable individually only if they directly participate in a constitutional violation or if they fail to properly train and supervise an offending employee so as to cause a deprivation of a prisoner's constitutional rights.  *Id.* (citing *Andrews v. Fowler*, 98 F.3d 1069, 1078 (8th Cir. 1996)).

In order to prevail on his failure to train claim, Plaintiff must show: (a) the ADC's training practices regarding prisoner safety were inadequate; (b) the failure to train was a result of a deliberate and conscious choice by the ADC; and (c) the training deficiency actually caused Plaintiff's injury.  *Andrews*, 98 F.3d at 1076 (citing *City of Canton v. Harris*, 489 U.S. 378, 389, 109 S.Ct. 1197, 1205 (1989)).

Plaintiff's claim fails for several reasons.  As noted, Plaintiff has no evidence that any of the Defendants were aware of the impending attack on Plaintiff.  The risk Spears posed was not apparent even to Plaintiff.  Without knowledge of a substantial risk to Plaintiff, there is no Eighth Amendment violation.  While inmate Spears is culpable for the unwarranted attack, as a matter of law, the Defendants are not liable under § 1983.  Supervisors are liable if a failure to properly train and supervise an offending employee causes a deprivation of constitutional rights.  *Tlamka,* 244 F.3d at 635.  Without an

underlying deprivation of constitutional rights, Defendants cannot be liable for failure to properly train and supervise.

Plaintiff also has failed to show that the training or supervision was inadequate. The fact that Spears had a weapon demonstrates a breakdown in security at the prison.  It is also true that Plaintiff's unaccompanied presence in front of an angry inmate's cell bars in the isolation unit is contrary to ADC policy.  Even so, failure to follow prison policy does not by itself state a claim. *Kennedy v. Blankenship*, 100 F.3d 640, 643 (8th Cir. 1996).  A pattern of violations of prison policy may show reckless disregard by a supervisor, but a single incident is usually insufficient to provide liability. *Howard v. Adkison*, 887 F.2d 134, 138 (8th Cir. 1989).  Plaintiff has not provided any evidence to show that the attack against him was more than an isolated incident.  Accordingly, Plaintiff's claim for failure to train and supervise cannot be sustained.

## CONCLUSION

For the reasons stated, Defendants' Motion for Summary Judgment (#81) is GRANTED and Plaintiff's claims are dismissed with prejudice.  Plaintiff's Motion to Compel (#72) is DENIED as moot.

DATED this 5th day of July, 2007.

_____
UNITED STATES MAGISTRATE JUDGE